(Judge Clark, of the Fourth Circuit, taking the place of Judge Stewart.)

\*Enoch Miller v. H. G. Weber et al.

1. JURISDICTION OF PROBATE COURT ON APPEAL FROM TOWNSHIP TRUSTEES.

The probate court, on appeal from the proceeding of the township trustees in the location of a ditch, is not made a court of error to review their record and pass upon error and irregularities appearing therein; but its jurisdiction is by statute limited to hearing and determining the preliminary questions pertaining to the case, and the dismissal of the appeal if it be found that the same is not perfected according to law; and in case the preliminary proceeding for appeal are in substantial conformity to law, then to the selection of, and trial to the jury, and the proceedings subsequent thereto in the statute provided for.

2. DUTIES OF JURY ON APPEAL.

Upon the trial on such appeal, the duties of the jury are confined to determining and rendering a verdict in writing therein, finding whether it will or not be conducive to the public health, convenience or welfare to cause the proposed ditch to be established or located, and the amount of compensation and damages to be awarded to the persons claiming the same.

3. VIEW OF DITCH BY JURY.

The jury, after being sworn, are required to examine the ditch, and may, from such examination, with or without the aid of testimony, make up their finding as to whether it will or not be conducive to the public health, convenience or welfare to cause said ditch to be established or located; and it is not error for the court, after having charged the jury that " before they could find in favor of the ditch, they must find that it would be conducive to the *public* health, convenience or welfare of the neighborhood through which it passes," to refuse to further instruct the jury "that the burden of proving the *public necessity* of the ditch by a preponderance of *testimony* is on the petitioners."

4. LOCATION AND CONSTRUCTION BY TRUSTEES.

The location and construction of one ditch by the township trustees to drain certain territory does not exhaust the power of draining over that territory, nor confine it to the deepening, widening, etc., of such previously constructed ditch; nor are trustees in the location of ditches restricted to the course of the natural flow of the surface water. The only limitation as to the number, course, and location of township ditches, is that they shall be conducive to the public health, convenience or welfare.

5. COMPENSATION OF LAND OWNERS.

For the land appropriated for such ditch the land owner is entitled to full compensation, and is also entitled to the damages to his other lands from which the appropriation is made. He is not entitled to have awarded him as part of his compensation the *value* of a strip of land not actually appropriated, on each side of the ditch; nor is he entitled to have the costs of constructing such portion of the ditch as the trustees apportion to him to construct, assessed as part of his damages.

6. COMPETENCY OF QUESTION AS TO INJURY TO LANDS.

It is not error to the prejudice of the land owner, on the trial of his claim for compensation and damages, to permit, against his objection, a properly qualified witness to be asked, " what injury, as matter of fact, the ditch would cause to the lands?" and to which question the witness answered, " None."

ERROR to the Court of Common Pleas of Franklin county.

WILLIAMS, C. J.

In June, 1881, Weber and others filed a petition before the trustees of Prairie township for the location of a certain township ditch, under which proceedings were had resulting in a final order of the trustees locating such ditch, and assessing compensation to Miller for lands of his appropriated. He appealed to the probate court, where the preliminary proceedings relating to the appeal having

* This case was affirmed by Supreme Court, without report, May 15, 1888. The decision has been followed in Trustees v. Jones, 2 Circ. Dec. 483, and Bender v. Beuhrer, 1 Dec. 549.

been adjudged regular, a jury was empaneled, and a trial had under the statute, resulting in a verdict, finding the ditch conducive to the public health, etc., and assessing Miller's compensation. Miller made a motion for a new trial, which was overruled, and he prosecuted a petition in error to the common pleas court. That court affirmed the judgment of the probate court, and this petition in error is prosecuted here to reverse the common pleas.

Various errors were assigned in the common pleas, for which it is claimed that court should have reversed the probate court, and in not doing so erred, because of which this court should reverse the common pleas.

I. The first one in order is "that no sufficient bond was filed by the petitioners with the township clerk, and the trustees failed to find that such bond was so filed—and this being necessary to the jurisdiction of the trustees—the probate court had none." It is a sufficient answer to this alleged error to say, that although the filing of such bond is jurisdictional, the question is not here properly presented. This is not a direct proceeding to reverse the order of the trustees—their record is not under review; only that of the probate court. The jurisdiction of that court, in this proceeding, like that of the trustees, is special and limited, and can be exercised only according to the terms of the statute and in the mode therein prescribed.

The statute provides, that on the filing of the appeal, that court shall fix a time for hearing the preliminary questions; and at that time, if the court find the proceedings relating to the appeal are regular, shall issue a venire for a jury. If the proceedings for the appeal have not been in conformity to the statute, the appeal shall be dismissed. Upon such appeal, the probate court is not made a court of error to review and pass upon the regularity of the proceedings before the trustees, but can only perform the statutory duty of determining whether the proceedings relating to the appeal are regular or not, and if regular, then proceed to the performance of that other statutory duty, the issuing of a venire for a jury, and proceeding in manner pointed out by the statute for the jury trial therein provided for.

Besides, the record of the probate court in no proper form presents any question relating to the sufficiency of the bond. It is not made any part of the record, or of any bill of exceptions, so as to call for its examination. A paper purporting to be some bond, which was given in evidence to the jury on the trial, is attached to the bill of exceptions, but is in no way made a part of it, and no action of the probate court in reference to it appears upon the record.

II. The next errors assigned relate to certain testimony admitted, and certain other testimony excluded, on the trial to the jury.

1. One Seibold was asked to state what injury, if any, as matter of fact, the ditch would cause to Miller's land, to which he answered, none. This was admitted against Miller's objection, which he claimed was simply an opinion in regard to his damages.

This testimony is plainly distinguishable in substance from that held incompetent in the case of Railroad Co. v. Campbell, 4 O. S., 583.

There the question called purely for an opinion of the amount of damages; that opinion might be made up, in whole or in part, of matters improper to enter into any just basis of damages, and could not properly be allowed to go to the jury. The question here, however, calls rather for a description of the manner, or statement of the nature, of the injury to the land, and not for any opinion on the subject, and could not prejudice the rights of Miller.

2. Miller in his behalf asked Postle, "whether the water that flows along the route of the proposed ditch, could be carried through Miller's land by underground tile drains." This was not permitted to be answered, and it is difficult to see how the answer could have been of any advantage to Miller.

The condemnation of his land was for an open ditch. He was entitled to full compensation for all the land taken for such ditch, and damages for any injury to the balance of his land. Whether it would afterward be tiled, was a mat-

ter purely with him, and could neither reflect upon the question whether the ditch would be conducive to the public health, nor enhance his damages, and the jury had no right to reduce his damages because the ditch might be tiled.

III.   The other errors assigned relate to the charge of the court to the jury, and the refusal to give in charge certain requests made by Miller's counsel.

To the charge given to the jury, no valid objection can be made.   The court substantially gave the requirements of the statute in charge, and in language appropriate to the particular case.

The duties of the jury are plainly specified by the statute, and are confined to three things:   *First*—To find and report whether the proposed ditch will be conducive to the public health, convenience or welfare.   The jury were instructed that in determining this question, they should take into consideration all the evidence, as well [as] any ditches that might theretofore have been constructed to drain that territory or part of it, as all other facts given in evidence throwing any light on the subject; and that it was not enough to find that the ditch would be a great convenience, but before they could find in favor of the ditch, they must find that it would be conducive to the *public* health, convenience or welfare of the neighborhood through which the ditch passes.

*Second* and *Third*—The only other matters the jury could pass upon were the compensation to Miller for his land appropriated, and the damage to the land from which the appropriation is made.   Upon this branch of the charge no exceptions were taken by Miller, except to the statement made to the jury by the court, "that they had nothing to do with the apportionment of the work of constructing the ditch."   It was proper for the court so to instruct the jury, for such apportionment was not brought into the court by the appeal, and it could neither be an element of compensation for the land taken, or of damages to the residue.

IV.   The requests to charge, which were refused, may be grouped in five propositions, as follows :

1.   That the trustees, having, in 1875, duly established and constructed a public ditch for the drainage of this territory, which by deepening, widening, etc., could be made amply sufficient for that purpose, their powers were exhausted, and they could not locate a new ditch, though better than the old one could be made, and all that could be done by the trustees was to deepen, widen, etc., the old ditch.

2.   Or if the old ditch, established in 1875, could be deepened, widened, etc., so as to make it as conducive to the public health, etc., it was the duty of the trustees to so widen, etc,, and not locate a new ditch.

3.   That the trustees were only clothed with such powers as are conferred by certain sections of the statute, which could only be exercised in conformity to their provisions, under which the trustees could not legally locate a ditch except by following the natural flow of the water, and not through a natural barrier, or through lands over which the water did not naturally flow.

4.   That if Miller already had drainage for his land, the trustees had no right to apportion any part of the ditch to be cut by him, and the cost of cutting such part apportioned to him should be allowed as part of his damages.

5.   That he was entitled to have assessed to him the value of the land for two feet on each side of the ditch and that covered by the dirt thrown from the ditch, as part of his compensation.

These several propositions are so intimately connected that they will be considered and disposed of together.

It is true that the trustees have only such powers as are conferred by statute, and that their jurisdiction must be exercised within the terms of the statute, and in the mode therein prescribed.   But with the powers and duties of the trustees, and whether they properly performed them, the jury had nothing to do.   The question should be submitted to the jury as an original one, whether the proposed ditch would be conducive to the public health, etc., or not, and be by them decided upon their view and the evidence, without any regard to what the statute

prescribed as the duties of the trustees, or whether in this instance they performed them properly or not.

The facts that the trustees had previously located and constructed a ditch intended to drain this territory in whole or part, and the extent to which such ditch accomplished that purpose, were properly put in evidence, and to be considered by the jury, to enable them to decide whether the proposed ditch would be conducive to the public health, etc., and the jury in determining this question should, and we must assume, in this case did give such facts their due weight (for the whole evidence is not set out in the bill of exceptions).

That such old ditch had been so established, and could be so deepened and widened as to accomplish as well and at as little expense as the new ditch the necessary drainage, does not of itself prevent the establishment of the new ditch.

It is no defense to an otherwise proper condemnation for a public use that another equally advantageous can be made; and to widen the old ditch would require a new condemnation. Nor does the fact that the trustees have already located one ditch in the neighborhood, exhaust their power of drainage over that territory, nor confine it to deepening and widening such old ditch. There is no such limitation on their power. On the contrary, the statute expressly authorizes them to locate *any* ditch that will be conducive to the public health, etc., no matter how many more have previously been located to drain the same territory. The only limitation on their powers as to deducive to the public health, etc., and whether they are so or not, the jury on appeal are to decide in view of all the facts and the whole situation, including and all previous ditches and their condition.

This view is not in conflict with Crawfis v. McClure, 30 O. S., 216, which simply decides that after the commissioners made their final order for the construction of the ditch, their powers over *it* as a new improvement were exhausted. Just as in this case, after the trustees made their final order locating the old ditch, their powers over that particular proceeding were exhausted; they could not resume jurisdiction and make a new order. The power to locate any number of ditches so long as they conduce to the public health, is not in that case called in question.

Nor are the trustees, in locating a ditch, restricted to the course of the natural flow of the surface water. That is a proper thing to be looked to with all other facts, and upon the whole it is left by the statute to the judgment of the trustees in the first instance, and to the jury on appeal, to say whether the particular ditch will be conducive to the public health, etc.

So far as this branch of the case is concerned, the charge given by the court to the jury fairly and properly placed the question before them, as it did also on the subject of damages. It was not error to refuse to charge the jury that they could allow Miller, as damages, the cost of constructing so much of the ditch as the trustees awarded him to cut. Their inquiry was limited to the value of the land taken, and the damages to the residue of the land from which it was taken. If the trustees abused their powers in the apportionment, Miller's remedy is elsewhere than before the jury on the appeal. That question the statute does not authorize the jury to pass upon. Nor was Miller entitled by way of compensation to the value of a strip of land four feet wide not actually appropriated. In so far as such strip was injured, he was entitled by way of damages to be compensated.

There is still one remaining question, and the most troublesome, presented by the record; and that is the last instruction requested by Miller's counsel, and refused. It is as follows:

"The principal object intended and authorized by the legislature in providing for the location and construction of township ditches, was the public health, convenience or welfare, and private interests are only incidental to the principal object, and such private interests of themselves will not authorize the location and opening of a township ditch. It is the public welfare that must make it

necessary, and the burden of proving this necessity by a preponderance of testimony is on the petitioners."

The court gave in charge substantially the whole of this request, except the last clause relating to the burden of proof, and the question is presented whether the court erred in refusing this last clause.

This question is not free from difficulty or doubt.

Whether in a proceeding in behalf of a public purpose like this, where no issues are made by pleadings, the person who calls into action the functions of the proper instrumentality for its accomplishment can be called an adversary party, so as to impose upon him the burden of establishing the necessary facts, it is not necessary now to decide.

Section 4538, Revised Statutes, provides, that after the jury are sworn, they shall "under the care of the sheriff, and with such other person or persons as the court may appoint to show them the premises, *and before any testimony* shall be given except the plat, etc.,   *   *   * proceed to examine the ditch as established or ordered, and the property of the several claimants taken therefore, etc.,   *   *   * and after making such examination, shall return to the court at the time the court shall have appointed, whereupon the trial before the jury shall proceed as other jury trials in said court."

It is apparent that under this section there are two legal sources of information to the jury upon which they may predicate their finding and verdict as to whether the ditch will be conducive to the public health, etc.—one is the examination made by them, and the other is the testimony given on the further trial after the view; and it is further apparent that the word "testimony" in this section means testimony of witnesses, as distinguished from evidence derived by the jury from their actual view of the ditch.

It seems in a proceeding like this for the establishment of a ditch, the trustees may in the first instance determine whether the proposed ditch will be conducive to the public health, etc., from *their view of the route* of the proposed ditch, without any testimony adduced before them (Revised Statutes, 4520). Why may not the jury on appeal do the same thing? At least, may they not use the results of their actual view in forming their conclusion and verdict upon the question of the public use contemplated? If the jury may, in whole or in part, make their finding and verdict on this question from their examination of the proposed ditch, etc., as contra-distinguished from the "testimony" as used in the statute, then the instruction refused, and which is now under consideration, was properly refused; for that instruction, if given, would have required the jury to disregard all information derived by them from their actual view, and to act solely upon the testimony of witnesses, given on the trial after view.

The principal object of the last clause of section 4538, was to afford a strictly constitutional mode of assessing compensation for the private property appropriated to the public use, and does not have the effect of denying to the jury the right to form an opinion and verdict as to such public use from their view of the ditch, with or without the aid of testimony delivered on the trial.

Besides, it is the rule, that to constitute error in the refusal of a court to charge a jury as requested, the proposition must be absolutely true in all its material parts under all reasonably conceivable circumstances. C. & P. R. R. Co. v. Sargent, 19 O. S., 438.

There is, we think, a substantial difference in the popular as well as in the legal signification of the terms "public necessity" and "conducive to the public health, convenience or welfare." The authority to do whatever is conducive to a given end, is a broader power than an authority to do only what is absolutely necessary to that end.

A jury, understanding the ordinary import of terms, would understand such difference. And especially in this case, where previous instructions requested looked all in the one direction that nothing but an absolute public necessity

6   C C   1

would authorize the ditch, it was not improper for the court to refuse to give the instruction couched in the form presented.

All that the statute requires is that the proposed ditch be conducive to the public health, *convenience*, or welfare, and not that it be an absolute necessity, and the statute seems simply to require that the question shall be submitted to the jury as a specific proposition, to find whether such ditch will or will not conduce to the public health, etc., and as before seen, the court charged the jury that before they could find in favor of the ditch, they must find that it would be conducive to the public health, convenience or welfare of the neighborhood through which it passes.

Upon the whole record, we think the case was fairly submitted to the jury; that, to say the least, the instruction requested, in view of the whole record, was calculated to mislead the jury, and that the judgment should not be reversed by reason of the refusal to give it in charge.

Judgment affirmed with costs—no penalty.

Gilmore & Mariott, for plaintiff in error.

Outhwaite and Keating, for defendant in error.